UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NELMA LUNETA LAPLACE,<br>individually and as representative of the<br>Estate and Child of<br>JOSHUA LEE LAPLACE<br>　　　　　　　　　Plaintiffs<br>v.<br><br>CITY OF SAN ANTONIO, (SIX<br>OFFICERS), in their individual capacities,<br>and WILLIAM MCMANUS, in his individual<br>capacity and his official capacity as Chief of<br>Police for the San Antonio Police<br>Department,<br>　　　　　　　　　Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO.  5:21-cv-21-471<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

NELMA LUNETA LAPLACE, individually and as the surviving wife and heir of her husband JOSHUA LEE LAPLACE, and mother of Joshua's only child and heir, claims that Defendants caused Joshua's death and violated his rights under the United States Constitution, the Texas Constitution and statutes state and federal.

## I.  STATEMENT OF THE CASE

1.     On November 25, 2020, at least six heavily armed San Antonio Police Department Officers in protective gear, having surrounded Joshua Lee LaPlace, "Joshua," who was alone and unarmed, simultaneously discharged each of their six firearms.   Joshua suffered at least 34 close range bullet wounds.   Ribs, vertebrae, and Joshua's left tibia and left fibula were broken by the police bullets.    One of Joshua's femurs was shattered, along with other bones.  Multiple broken bones penetrated Joshua's skin.  Gunshot wounds caused lethal injuries as the bullets blew through the left side of Joshua's head and two entered Joshua's chest.  The bullets penetrated his skull, brain and many of the arteries of his heart.

2.      At all relevant times, and on information and belief because Defendants have refused to share any information about the incident with Plaintiffs, Joshua was unarmed and presented no threat of serious bodily injury or death.  Joshua was not committing and had not committed any crime or violent crime.

3.      The Defendants are responsible for all the bullet wounds suffered by Joshua on November 25, 2020.

4.      Defendants had or should have had several non-lethal alternatives to take custody of Joshua.   Joshua had been constitutionally seized prior to being killed.

5.      After seizing Joshua, Defendants were no longer protected by qualified immunity. There can be no immunity for the synchronous drawing of at least six firearms by the officers surrounding Joshua followed by the simultaneous discharge of their weapons by multiple officers, if not all six officers.   The only reasonable conclusion is that the Defendants directly intended to cause Joshua's immediate death.

6.      Somewhere short of the 34th bullet wound, Defendants succeeded.   Joshua was dead as a result of the unconstitutional use of excessive force.

7.      Defendants' conduct, under color of law, was a gross violation of the Joshua's Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

8.      Nelma sues Defendants under TCRP §§71.002, 71.021 for Joshua's death.

9.      Nelma further alleges that the Defendant Officers' actions resulted from their training by and the policies and customs of the San Antonio Police Department, making the CITY OF SAN ANTONIO liable for the Defendant Officers' actions.

## I.  JURISDICTION AND VENUE

10.      Plaintiffs bring this action under the U.S. Constitution, 42 U.S.C. §1983 and 1988, and state law.   Jurisdiction is based on 28 U.S.C. §§1331 and 1343, including 1343(a)(3)-(4).

11.     Jurisdiction over the Plaintiffs' TTCA claims arises under TEX. CIV. PRAC. & REM. CODE §§101.021, 101.025, 101.102 & 101.215.   Defendant Officers' misuse of tangible personal property caused Joshua's injuries and death.

At all relevant times, the City has had actual knowledge of Joshua's death which direct knowledge fulfills any requirement for notice of these claims as required by TEX. CIV. PRAC. & REM. CODE §101.101. Plaintiffs invoke the supplemental jurisdiction of the Court, pursuant to 28 U.S.C. §1367(a), to consider their state law claims.

12.     Venue is proper in this Court under 28 U.S.C. §1391(b)(1)-(2) because Defendants reside and have offices in this district and division.

## II.  PARTIES

13.      Joshua was 30 years old on November 25, 2020.

14.     At all relevant times, the officers in question acted as agents, servants, and employees of the City under color of law. As such, Defendant Officers were responsible for upholding the laws of the United States and Texas.

15.     Nelma sues Defendant Officers in her individual capacity, and as the mother of Joshua's only child, for damages and as heir of Joshua for his Survival Damages.

16.     At all relevant times, William McManus was San Antonio Police Department Police Chief and acted as an agent, servant, and employee of the City.   As such, Chief McManus was responsible for upholding the laws of the United States and Texas.    The San Antonio Police Department is the agency controlled by the City of San Antonio and charged with fulfilling the police functions of the City of San Antonio.

17.     Nelma sues Chief McManus in her individual capacity for damages and as heir of Joshua Lee LaPlace, and mother of Joshua's only child, for Survival Damages.

18.     The City of San Antonio, a political subdivision of the State of Texas, operates and is responsible for the police department and, for this reason, is liable for the conduct of Defendant Officers.

19.     At all times, Defendants acted under color of law and pursuant to legal authority.

### III. STATEMENT OF FACTS

20.     On November 25, 2020, 34 bullet wounds inflicted by the officers in question directly caused the excruciating death of Joshua.

21.     The Defendant Officers, as well as the City and Chief, are responsible for all the bullet wounds suffered by Joshua on November 25, 2020, for his personal injuries, his death, and the personal injuries of Plaintiff and all heirs.

22.     On November 25, 2020, there were at least six (6) police officers at the scene and Joshua was by himself.

23.     Defendants had or should have had several non-lethal alternatives to take custody of Joshua.

24.     Even if Joshua, who was unarmed, posed a risk to the public, which is certainly not admitted, there were at least six (6) police officers on the scene and surrounding Joshua when the phalanx of bullets was unleashed.    None of the officers had reason to use deadly force, and there can be no justification for Joshua's execution-style death.

25.     Bleeding and suffering from numerous broken bones from the multiple gunshot wounds, it is not possible for Joshua to have presented any threat to any of the Defendant Officers.

26.     On November 25, 2020, Joshua experienced severe mental distress, when confronted by the Defendant Officers.

27.     The City initially sent a regular patrol officer, who lacked adequate training.

28.     The initial responding officer or officers called for additional assistance and the Defendant Officers were dispatched to the scene.

29.      Reports, if any, of someone shooting a gun did not involve Joshua.

30.      Defendant Officers were not properly trained in the use of non-lethal force or failed to utilize their training in the use of non-lethal force.

31.     Defendant Officers' use of excessive, unnecessary, and deadly force, along with the policies and customs of the City and Chief McManus' police department, caused extreme bodily injuries and extreme pain and suffering to Joshua and, ultimately, his death.

32.     Defendant Officers suffered no injuries or assault and no Defendant Officer faced any one-on-one confrontation with Joshua, or would have done so based on the lack of or improper training.

33.     The City and its Police Chief had duties to promulgate, implement, and enforce policies and procedures that adequately protect citizens against the use of deadly force when unnecessary. Further, the City has a duty to adequately train, supervise, and discipline its law enforcement officers in their use of constitutionally-permissible force. The City and its Police Chief breached these duties.

34.     The City and the Chief have duties to train officers to avoid excessive use of force or deadly force.   The City and the Chief breached these duties as no training would lead to any single individual, much less an unarmed individual, suffering at least 34 bullet wounds, many of which would have independently rendered anyone incapacitated, at the hands of numerous officers in protective gear.

## IV.     CAUSES OF ACTION

### A.  As to Defendant Officers

**First Cause of Action**
---------------
**Unconstitutional Use of Excessive and Deadly Force**

35.     Defendant Officers violated Joshua's right to be free from unreasonable seizure of his person when Defendant Officers unjustifiably caused the death of Joshua.   Each of the Defendant Officer's actions were objectively unreasonable and violated Joshua's rights to be free from unlawful seizure, to be free from the use of excessive force, to have life and to the integrity of his person.  The Fourth and Fourteenth Amendments fully protect these rights and prohibit the use of deadly force in non-deadly circumstances imposing no immediate threat of serious bodily injury or death.

36.     Numerous of the Defendant Officers' specific acts were objectively unreasonable. First, Defendant Officers failed to utilize non-deadly force.   There were six heavily armed offices with protective gear.

37.     Second, the Defendant Officers failed to assess the relevant circumstances before using excessive and deadly force against Joshua.   An objective bystander would have observed that the young man was unarmed and failed to present any real threat to himself or those surrounding him.

38.     Third, Defendant Officers' use of excessive and deadly force did not relate to a proper or conscious assessment of danger.  Each of the Defendant Officer's choice was objectively unreasonable under the circumstances and unconstitutional.

39.     Finally, after Defendant Officers' force incapacitated Joshua, but did not kill him, Defendant Officers continued to fire a phalanx of bullets into their defenseless victim.  Unarmed, Joshua never presented any danger to himself, others, or to the six (6) Defendant Officers, and, with Joshua unarmed and incapacitated, any perceived threat to any Defendant Officer had been ended.

40.     The excessive use of force was consistent with the unconstitutional training, policies and customs of the City, the Police Department and Chief McManus.

## 2. Second Cause of Action
---------------
### Assault and Battery

41.     Defendant Officers' assault and battery against Joshua tragically killed him.

42.     Prior to his death, Joshua suffered direct assault and battery and suffered extreme mental, physical and emotional pain caused by Defendants.

43.     Nelma has suffered extreme mental and emotional anguish as a proximate result of Joshua's assault and battery, and Nelma and the Child will experience future mental and emotional anguish as a proximate result of Joshua's assault and battery.

44.     Because Defendant Officers acted willfully, intentionally, or with reckless and callous indifference to Joshua's civil rights, Plaintiff seeks punitive damages.

## B.  As to the City

### First Cause of Action
---------------
### Failure to Supervise

45.     The City of San Antonio and Police Chief McManus failed to properly supervise the Defendant Officers.

46.     This failure to supervise was deliberately indifferent to the Joshua's constitutional rights because proper supervision would have ensured that Joshua would be free from Defendant Officers' unlawful seizure of Joshua's person and would be safe and secure from undue, unreasonable, excessive, and deadly force.

47.     Defendants had a constitutional duty to supervise the Defendant Officers and to protect Joshua from Defendant Officers' wrongful acts, omissions, and unconstitutional use of

force.

48.     Further, the City's supervisory policies are unconstitutional in the following areas:

a.      Improper responses to requests for an unavailable police service, such as requests for a crisis intervention team officer;

b.      Inappropriate communications of crisis intervention requests for a distraught individual;

c.      Not dispatching appropriate personnel;

d.      Improper use of a firearm;

e.      Improper use of non-lethal self-defense measures;

f.      Inadequate management and detention of persons;

g.      Excessive use of force and use of deadly force;

h.      Deficient use of crisis intervention techniques; and

i.      Not providing proper and adequate information for first response officers.

49.     The actions and omissions of Defendant Officers' supervisors, including Chief McManus, constituted supervisory encouragement of the use of excessive and deadly force. This grossly inadequate supervision resulted from, and was caused by, Defendants' conscious and deliberate indifference to the rights of individuals and to Joshua's right not be subjected to constitutional deprivations.

50.     The City's and Chief McManus' constitutionally-flawed supervision of the Defendant Officers deprived the Joshua of his constitutional rights and proximately caused Joshua's injuries and death.

## 2. Second Cause of Action
---------------
### Unlawful Policy and Custom by Acts of Official Policy Maker

51.     Chief of Police McManus is an official policymaker.[1]  Causing the improper transfer

of critical information to first responders, improper and inaccurate responses to requests for assistance from a responding officer, and unnecessary weapon use under these circumstances or on detainees forms an official municipal policy.  Further, this conduct arises to a City and San Antonio Police Department custom because Chief McManus has tolerated and acquiesced in such behavior.  The policy and custom includes the use of deadly force against unarmed citizens or detainees under Chief McManus' care.   Such policy and custom violated Joshua's Fourth and Fourteenth Amendment protections.

52.     Defendant Officers' unreasonable and excessive use of force followed the City's and Chief McManus' policies, procedures, practices, and customs. At all relevant times, Defendant Officers followed the policies, procedures, customs and practices under color of law, put forth by the City and Chief McManus.

53.     The City's deficient custom, policies, procedures, and practices for emergency communications, transferring information within the police department, dispatching an inappropriate officer or officers, and the improper and unreasonable use of force consciously disregarded and were deliberately indifferent to Joshua's right to be free from excessive and deadly force.

54.     The deficient customs, policies, and practices are a direct and proximate cause of the unlawful use of excessive and deadly force against Joshua. These deficient policies, procedures, practices, and custom proximately caused the unconstitutional use of force against Joshua. As a direct result of these constitutional violations, Joshua suffered severe injuries and death.

### 3. Third Cause of Action
---------------
### San Antonio Police Department Informal Custom and Policy

55.     The City's police department has an informal custom, practice or policy regarding

9

the use of deadly force, which includes, but is not limited to:

    a.    Allowing, encouraging, requiring, and training officers to use deadly weapons in lieu of less harmful techniques, including non-lethal physical restraints or proper detention techniques;

    b.    Allowing, encouraging, requiring, and training officers to use deadly force as a first resort, rather than training them to assess the situation and use only necessary force;

    c.    Allowing, encouraging, requiring, and training officers to confront distraught detainees in such a way as to lead to the officer's use of excessive force;

    d.    Failing to establish the necessary policies for officers responding to service calls involving distraught individuals;

    e.    Failing to establish policies necessary to dispatch appropriate persons or officers for calls involving distraught individuals; and

56.    As part of these policies, customs, and practices, the City trains officers to assess situations according to an action/reaction motive. The City trains officers and expects them to use excessive or deadly force before a person has a chance to act. Consequently, the City's officers, including Defendant Officers, unconstitutionally rely on excessive and deadly force as an enforcement tool.

## 4. Fourth Cause of Action
---------------
## Failure to Train

57.    The City's and Chief McManus' law enforcement training policies are unconstitutional in that they fail to provide for:

    a.    Proper communication of crisis intervention requests for distraught persons;

    b.    Proper responses to requests for an unavailable police service, such as requests for a crisis intervention team officer;

    c.    Dispatching appropriate personnel to respond to distraught persons calls;

    d.    Appropriate and adequate information for first response officers.

e. Proper use of non-lethal weapons, such as batons, tazers and chemical spray;

f. Proper use of a firearm;

g. Proper use of non-lethal, self-defense measures;

h. Appropriate management and detention of persons;

i. Limiting excessive use of force and use of deadly force;

j. Proper use of crisis intervention techniques; and,

k. Appropriate use of supplemental restraints.

58. Improper and inadequate law enforcement training in detention, proper use of weapons, proper interrogation and arrest procedures, and the use of excessive and deadly force was deliberately indifferent toward Joshua's constitutional rights and deprived Joshua of those rights.

59. The inadequate training caused Defendant Officers to fail to realize the gravity and unconstitutionality of Defendant Officers' conduct.

60. As a direct result of the constitutional violations, Joshua suffered severe injuries and death, emotional distress and severe pain and suffering. Plaintiff and all heirs of Joshua have suffered financial damages, emotional distress, pain and suffering, and loss of society.

61. Because Chief McManus acted willfully, intentionally, or with reckless and callous indifference to Joshua's and all citizens' civil rights, Plaintiffs seek punitive damages for Chief McManus' conduct.

<u>**C.**</u>     <u>**As to All Defendants**</u>

**Cause of Action**
**Survival and Wrongful Death Claims**

62. Pursuant to Tex.Civ.Prac.&Rem. Code §§71.002, 71.021, Texas case and common

law, and the Texas Tort Claims Act, the City is liable for its employees' actions, including its agents and officers.

63.     Nelma may recover individually for Joshua's severe mental anguish and emotional distress, for her severe mental anguish and emotional distress and for the severe mental anguish and emotional distress of their son, caused by Defendants' gross negligence.

64.     Joshua suffered extreme distress, anxiety, shock, and mental anguish, while living, which was directly and proximately caused by Defendants.

65.     Nelma and Joshua's child have suffered extreme distress, anxiety, shock, and mental anguish because of Joshua's death.

66.     Nelma and their child may recover damages from the City for Joshua's wrongful death because City employees caused Joshua's death through wrongful acts, neglect, carelessness, gross negligence, and wanton disregard for Joshua's rights.

67.     The City is liable for Joshua's wrongful death because it owed Plaintiff and their child duties under the Federal Constitution, and Texas law – all as set out above. The City breached these duties and the breaches proximately caused Plaintiffs' damages.

68.     Plaintiff sues for actual damages, including, but not limited to, the pain, mental anguish, loss of companionship and society, loss of inheritance, and for the damages incurred by their son, as well as pre-judgment and post-judgment interest and costs.

69.     Plaintiff asserts a survival claim against Defendants for Joshua's claims under federal and state law and damages, including, but not limited to, emotional damages, his mental anguish, his pain and suffering, and loss of earning capacity, his funeral expenses, and pre-judgment and post-judgment interest as allowed by law and costs.

### D.     As to All Defendants

**ATTORNEYS' FEES**

70.     Nelma is entitled to recover attorneys' fees, costs, litigation expenses, and expert fees, as allowed, pursuant to 42 U.S.C. §§1988, 12205.

### E.     As to All Defendants

**JOINT AND SEVERAL LIABILTY**

71.     All Defendants are jointly and severally liable.

### CONCLUSION AND PRAYER

THEREFORE, Nelma prays for judgment against all Defendants for actual and compensatory damages of no less than $15,000,000, for punitive damages of no less than $30,000,000, for statutory attorneys' fees, costs, and expenses and for all other additional relief as the Court deems just and proper.

Respectfully submitted,

**THE AVERILL FIRM**

*/s/ Martin P. Averill*
**Martin Patrick Averill**
Founder
SBOT #24025231
12610 Jupiter at the Park
Suite 1410
Dallas, Texas 75238
(214) 878-9822
averillfirrn@gmail.com